IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

1, Keenan McIntosh, Plaintiff

Address : SCI-Phoenix

    P.O. Box 244

    1200 Mokychic Drive

    Collegeville, PA  19426

    vs.

1, Secretary Of Corrections, John E. Wetzel, Defendant

Address : Secretary's Office

    1920 Technology Parkway

    Mechanicsburg, PA  17050

2. Superintendent, Barry Smith, Defendant

Address : SCI-Houtzdale

    P.O. Box 1000

    Houtzdale, PA 16698-1000

3. Deputy Superintendent, Close, Defendant

Address : SCI-Houtzdale

    P.O. Box 1000

    Houtzdale, PA  16698-1000

4, Deputy Superintendent, B.J. Salamon, Defendant

Address : SCI-Houtzdale

    P.O. Box 1000

      : : : : : : : : : : : : : : : : : : : : : : : : :

AMENDED COMPLAINT IDENTIFYING ALL
JOHN/JANE DOE DEFENDANTS

**FILED**

JAN 2 4 2023

CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

CIVIL ACTION NO.: 2:20-cv-1957

(Continued: AMENDED COMPLAINT IDENTIFYING ALL JOHN/JANE DOE DEFENDANTS)

Houtzdale, PA 16698-1000

5. CERT Team Member, Matthew Cox, Defendant

Address: SCI-Houtzdale

    P.O. Box 1000

    Houtzdale, PA 16698-1000

6. CERT Team Member, Jamie W. Oliver, Defendant

Address: SCI-Houtzdale

    P.O. Box 1000

    Houtzdale, PA 16698-1000

7. CERT Team Member, Brian McAllister, Defendant

Address: SCI-Houtzdale

    P.O. Box 1000

    Houtzdale, PA 16698-1000

8. CERT Team Member, John Firment, Defendant

Address: SCI-Houtzdale

    P.O. Box 1000

    Houtzdale, PA 16698-1000

9. Nurse, Deborah Askey, Defendant

Address: SCI-Houtzdale

    P.O. Box 1000

    Houtzdale, PA 16698-1000

10. Captain, Lewis, Defendant

(Continued: AMENDED COMPLAINT IDENTIFYING ALL JOHN/JANE DOE DEFENDANTS)

Address: SCI-Houtzdale

    P.O. Box 1000

    Houtzdale, PA 16698-1000


11. Lieutenant, Detwiler, Defendant

Address: SCI-Houtzdale

    P.O. Box 1000

    Houtzdale, PA 16698-1000


12. Lieutenant, Veihdoffer, Defendant

Address: SCI-Houtzdale

    P.O. Box 1000

    Houtzdale, PA 16698-1000


13. Sergeant, Rieg, Defendant

Address: SCI-Houtzdale

    P.O. Box 1000

    Houtzdale, PA 16698-1000


14. Correctional Officer, Miller, Defendant

Address: SCI-Houtzdale

    P.O. Box 1000

    Houtzdale, PA 16698-1000


15. Correctional Officer, Strvison, Defendant

Address: SCI-Houtzdale

    P.O. Box 1000

    Houtzdale, PA 16698-1000

(Continued: AMENDED COMPLAINT IDENTIFYING ALL JOHN/JANE DOE DEFENDANTS)

16. Correctional Officer, Hershberger, Defendant

Address: SCI-Houtzdale

    P.O. Box 1000

    Houtzdale, PA 16698-1000


17. Captain, Acey, Defendant

Address: SCI-Houtzdale

    P.O. Box 1000

    Houtzdale, PA 16698-1000


18. Superintendent, Lee J. Estock, Defendant

Address: SCI-Pine Grove

    189 Fyock Road

    Indiana, PA 15701


19. Security Captain, B. Sheeder, Defendant

Address: SCI-Pine Grove

    189 Fyock Road

    Indiana, PA 15701


20. Correctional Officer, Rietscha, Defendant

Address: SCI-Pine Grove

    189 Fyock Road

    Indiana, PA 15701


21. Librarian, B. Weaver, Defendant

Address: SCI-Pine Grove

    189 Fyock Road

(Continued: AMENDED COMPLAINT IDENTIFYING ALL JOHN/JANE DOE DEFENDANTS)

Indiana, PA 15701

AMENDED COMPLAINT IDENTIFYING ALL

JOHN/JANE DOE DEFENDANTS


Plaintiff Keenan McIntosh files this AMENDED COMPLAINT IDENTIFYING ALL JOHN/JANE DOE DEFENDANTS in conformance with Fed. R. Civ. P. Rule 8 in response to Case Management Order from The United States District Court For The Western District Of Pennsylvania filed on the 18th day of October, 2022, and Order filed on the 12th day of January, 2023.


Date: January 18, 2023

Respectfully Submitted

Keenan McIntosh – MV 9011
SCI-Phoenix
P.O. Box 244
1200 Mokychic Drive
Collegeville, PA 19426

*I. PARTIES*

1. Plaintiff, Keenan McIntosh, is and was at all times mentioned herein a prisoner of the State of Pennsylvania in the custody of the Pennsylvania Department Of Corrections. Plaintiff is currently confined at SCI-Phoenix located at P.O. Box 244, 1200 Mokychic Drive, Collegeville, PA 19426.

2. Defendant, John E. Wetzel is the Secretary Of Corrections for the Pennsylvania Department Of Corrections. His office is located at 1920 Technology Parkway, Mechanicsburg, PA 17050. He is legally responsible for the overall operation of the department and each institution under its jurisdiction, including SCI-Houtzdale, and SCI-Pine Grove. He is being sued in his official, and individual capacities.

3. Defendant, Barry Smith is the Superintendent of SCI-Houtzdale located at P.O. Box 1000, Houtzdale, PA 16698-1000. He is legally responsible for the operation of SCI-Houtzdale and for the welfare of all the inmates in that prison. He is being sued in his official, and individual capacities.

4. Defendant, Close is the Deputy Superintendent of SCI-Houtzdale located at P.O. Box 1000, Houtzdale, PA 16698-1000. He is legally responsible for the operation of SCI-Houtzdale and for the welfare of all the inmates in that prison. He is being sued in his official, and individual capacities.

5. Defendant, B.J. Salamon is the Deputy Superintendent of SCI-Houtzdale located at P.O. Box 1000, Houtzdale, PA 16698-1000. She is legally responsible for the operation of SCI-Houtzdale and for the welfare of all the inmates in that prison. She is being sued in her official, and individual capacities.

6. Defendant, Matthew Cox is a CERT team member for the Pennsylvania Department Of Corrections who, at all times mentioned in this complaint held the rank of a CERT team member and was assigned to SCI-Houtzdale located at P.O. Box 1000, Houtzdale, PA 16698-1000. He is being sued in his individual capacity.

7. Defendant, Jamie W. Oliver is a CERT team member for the Pennsylvania Department Of Corrections who, at all times mentioned in this complaint held the rank of a CERT team member and was assigned to SCI-Houtzdale located at P.O. Box 1000, Houtzdale, PA 16698-1000. He is being sued in his individual capacity.

(Continued: I. PARTIES)

8.  Defendant, Brian McAllister is a CERT team member for the Pennsylvania Department Of Corrections who, at all times mentioned in this complaint held the rank of a CERT team member and was assigned to SCI-Houtzdale located at P.O. Box 1000, Houtzdale, PA 16698-1000. He is being sued in his individual capacity.

9.  Defendant, John Firment is a CERT team member for the Pennsylvania Department Of Corrections who, at all times mentioned in this complaint held the rank of a CERT team member and was assigned to SCI-Houtzdale located at P.O. Box 1000, Houtzdale, PA 16698-1000. He is being sued in his individual capacity.

10.  Defendant, Deborah Askey is a Nurse for the Pennsylvania Department Of Corrections and she worked for the medical staff at SCI-Houtzdale located at P.O. Box 1000, Houtzdale, PA 16698-1000. She is being sued in her official, and individual capacities.

11.  Defendant, Lewis is a Captain for the Pennsylvania Department Of Corrections who, at all times mentioned in this complaint held the rank of Captain and was assigned to SCI-Houtzdale located at P.O. Box 1000, Houtzdale, PA 16698-1000. He is being sued in his official, and individual capacities.

12.  Defendant, Detwiler is a Lieutenant for the Pennsylvania Department Of Corrections who, at all times mentioned in this complaint held the rank of Lieutenant and was assigned to SCI-Houtzdale located at P.O. Box 1000, Houtzdale, PA 16698-1000. He is being sued in his official, and individual capacities.

13.  Defendant, Yeihdoffer is a Lieutenant for the Pennsylvania Department Of Corrections who, at all times mentioned in this complaint held the rank of Lieutenant and was assigned to SCI-Houtzdale located at P.O. Box 1000, Houtzdale, PA 16698-1000. He is being sued in his official, and individual capacities.

14.  Defendant, Rieg is a Sergeant for the Pennsylvania Department Of Corrections who, at all times mentioned in this complaint held the rank of Sergeant and was assigned to SCI-Houtzdale located at P.O. Box 1000, Houtzdale, PA 16698-1000. He is being sued in his official, and individual capacities.

(Continued: I. PARTIES)

15.  Defendant, Miller is a Correctional Officer for the Pennsylvania Department Of Corrections who, at all times mentioned in this complaint held the rank of Correctional Officer and was assigned to SCI-Houtzdale located at P.O. Box 1000, Houtzdale, PA 16698-1000. He is being sued in his official, and individual capacities.

16.  Defendant, Stivison is a Correctional Officer for the Pennsylvania Department Of Corrections who, at all times mentioned in this complaint held the rank of Correctional Officer and was assigned to SCI-Houtzdale located at P.O. Box 1000, Houtzdale, PA 16698-1000. He is being sued in his official, and individual capacities.

17.  Defendant, Hershberger is a Correctional Officer for the Pennsylvania Department Of Corrections who, at all times mentioned in this complaint held the rank of Correctional Officer and was assigned to SCI-Houtzdale located at P.O. Box 1000, Houtzdale, PA 16698-1000. He is being sued in his official, and individual capacities.

18.  Defendant, Acey is a Captain for the Pennsylvania Department Of Corrections who, at all times mentioned in this complaint held the rank of Captain and was assigned to SCI-Houtzdale located at P.O. Box 1000, Houtzdale, PA 16698-1000. He is being sued in his official, and individual capacities.

19.  Defendant, Lee J. Estock is the Superintendent of SCI-Pine Grove located at 189 Fyock Road, Indiana, PA 15701. He is legally responsible for the operation of SCI-Pine Grove and for the welfare of all the inmates in that prison. He is being sued in his official, and individual capacities.

20.  Defendant, B. Sheeder is the Security Captain for the Pennsylvania Department Of Corrections who, at all times mentioned in this complaint held the position of Security Captain and was assigned to SCI-Pine Grove located at 189 Fyock Road, Indiana, PA 15701. He is being sued in his official, and individual capacities.

21.  Defendant, Rietscha is a Correctional Officer for the Pennsylvania Department Of Corrections who, at all times mentioned in this complaint held the rank of Correctional Officer and was assigned to SCI-Pine Grove located at 189 Fyock Road, Indiana, PA 15701. He is being sued in his official, and individual capacities.

(Continued: I. PARTIES)

22.   Defendant, B. Weaver is the Librarian for the Pennsylvania Department of Corrections who, at all times mentioned in this complaint held the position of Librarian and was assigned to SCI-Pine Grove located at 189 Fyock Road, Indiana, PA 15701. He is being sued in his official, and individual capacities.

23.  All the defendants have acted under color of state law at all times relevant to this complaint.

9

## II. JURISDICTION & VENUE .

1. This is a civil action authorized by 42 U.S.C. Section 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. The court has jurisdiction under 28 U.S.C. Section 1331 and 1343 (a)(3). The plaintiff seeks ~~money~~ monetary relief.

2. The United States District Court For The Western District Of Pennsylvania is an appropriate venue under 28 U.S.C. Section 1391 (b)(2) because it is where the events giving rise to this claim occurred

III, STATEMENT OF CLAIMS

## NEGLIGENCE CLAIM

1. Defendants Secretary Of Corrections John E. Wetzel, Superintendent Barry Smith, Deputy Superintendent Close, Deputy Superintendent B.J. Salamon, Lieutenant H. Veihdoffer, Nurse Deborah Askey, and CERT team members Matthew Cox, Jamie W. Oliver, Brian McAllister, and John Firment owed plaintiff a duty of reasonable care because plaintiff was housed in SCI-Houtzdale where the defendants were employed. Defendants mentioned in this paragraph breached their duty by acting careless an unreasonable. Lieutenant H. Veihdoffer, Nurse Deborah Askey, and CERT team members Matthew Cox, Jamie W. Oliver, Brian McAllister, and John Firment showed up to psychiatric observation cell number 1005 which is located in the mental health unit in the infirmary section where plaintiff was housed on January 8, 2019 between the time frame of 8:00am - 9:00am to transfer plaintiff to the restricted housing unit, which plaintiff denied to go, and then Lieutenant H. Veihdoffer and one of the CERT team members sprayed plaintiff with mace as the remaining CERT team members and Nurse Deborah Askey watched without intervening to help plaintiff knowing he suffers from a severe respiratory deficiency known as asthma. This audio an video recorded planned use of force was used by the defendants in order to transfer plaintiff to the Restricted Housing Unit. Beings though this was a planned use of force defendants had ample time to come up with a alternative method to prevent agitating plaintiff's life threatening medical condition. Plaintiff who could not breathe nor see was then handcuffed, and escorted to the restricted housing unit on C block, and was placed in seven cell which is a observation/camera cell that has a camera inside the cell and outside the door of the cell facing inside the cell. Defendants intentionally placed plaintiff in this cell that they knew was defective, because not only are there documents about a ten inch spider webbed shape crack that was in the back window, but plaintiff overheard one of the defendants say "put him in that fucked up cell" and "get that mattress out of there". Plaintiff was then placed on top of the metal bed frame, and instructed to open his eyes to have them rinsed by Nurse Deborah Askey, and when plaintiff opened his eyes he was sprayed for a second time directly in his eyes for no apparent reason before they all exited the cell. Nurse Deborah Askey displayed ill will along with Lieutenant H. Veihdoffer and the CERT team members because she posed as a decoy to this unjustifiable act which noone protected to. Secretary Of Corrections John E. Wetzel, Superintendent Barry Smith, and Deputy Superintendent Close who are responsible for the safety an security of the individuals housed at their facility, and Deputy Superintendent B.J. Salamon who is responsible for the medical and mental health care of the individuals housed at this facility are all held liable for failing to accommodate people with respiratory disabilities in use of force training as well as through policies an procedures constituting Eighth, and Fourteenth Amendment violations to the U.S. Constitution. Defendants Secretary

(Continued: NEGLIGENCE CLAIM - Paragraph 1.)

Of Corrections John E. Wetzel, Superintendent Barry Smith, Deputy Superintendent Close, and Deputy Superintendent B.J. Salamons negligence caused plaintiff to suffer reoccurring asthma attacks, and psychological distress in the form of panic attacks, anxiety, depression, trouble sleeping, and a intense fear of seeking psychological treatment while being housed in the Department Of Corrections. Furthermore this excessive use of force, denial of medical care, and the fact that the defendants intentionally placed plaintiff in a hazardous cell violates Pennsylvania Department Of Corrections policy DC-ADM 201 which is attached as Exhibit A and states that the use of force is suppose to stop once order is restored and also that force is not authorized as a means of punishment or revenge. It also constitutes violations of the Eighth, and Fourteenth Amendments to the U.S. Constitution because it was not applied in a effort to maintain or restore discipline but was used to maliciously cause harm and obtain gratification. Plaintiff suffered multiple asthma attacks and could of possibly died from defendants Lieutenant H. Veihdoffer, Nurse Deborah Askey, and the CERT team members locking him in a cell with mace lingering around it and by not providing him with medical treatment. Lieutenant H. Veihdoffer, Nurse Deborah Askey, and the CERT team members also did not provide medical treatment for plaintiffs eyes which were damaged at the time ultimately leading to permanent damage of his left eye. Plaintiff eventually sustained back pains, and inflammatory damage to his feet from the cell the defendants placed him in. Plaintiff suffered and continues to suffer psychological distress in the form of panic attacks, anxiety, depression, trouble sleeping, and a intense fear of seeking psychological treatment while being housed in the Department Of Corrections because what was previously stated herein this paragraph all stems from plaintiff seeking psychological treatment. Plaintiff suffered economic losses due to him receiving treatment for his eyes, and inflammation, and will suffer future economic losses due to his need for eye treatment, psychological treatment, and possibly psychiatric treatment, possibly treatment for his back, and possibly treatment for arthritis.


2. Also proving negligent are defendants Correctional Officer Hershberger, Correctional Officer Miller, Captain Lewis, Deputy Superintendent B.J. Salamon, Correctional Officer Stivison, Sergeant Rieg, Lieutenant Detwiler, and Superintendent Barry Smith. All of these defendants previously mentioned in this paragraph owed plaintiff a duty of reasonable care because plaintiff was housed in SCI-Houtzdale where the defendants were employed. Defendants breached their duty by acting careless an unreasonable by having knowledge of the injuries plaintiff sustained and the harsh hazardous an unsanitary cell conditions that plaintiff was subject to for seventy two days, which started on January 8, 2019 an ended on March 19, 2019 which was basically the whole winter. There were severe snow storms in that mountainous

(Continued: NEGLIGENCE CLAIM-Paragraph 2.)

region that winter and plaintiffs cell which was a corner cell directly next to the yard had a ten inch spider web shaped crack located in the back window which accumulated ice because of it. Defendants Correctional Officer Hershberger, and Correctional Officer Miller knew of this infraction not only from plaintiffs complaints, but also from them conducting numerous routine security searches of the cell where they acknowledged it as having been there and even rubbed it in plaintiffs face by making sarcastic jokes calling the cell siberia. If you look at Exhibit B (1) you will see that these two defendants admitted to their negligent behavior. These two defendants also knew from complaints and their own observation that plaintiffs light which is controlled from outside the cell was left on for two weeks causing plaintiff sleep deprivation and plaintiff had no property, clothing, mattress, bedding, and toilet paper for two weeks and was denied showers, yard, and cleaning supplies to clean his cell which had mace lingering around it by the two defendants as well. Plaintiff was unable to wash the mace off his face an body nor wipe his buttocks after using the bathroom and was subject to either sleeping on a freezing cold metal bed frame, freezing cold concrete floor, or sleep sitting on a freezing cold metal toilet which was filled with feces and urine due to plaintiffs cell water being cut off for two weeks because of plaintiffs toilet flooding his first night in the cell on January 8, 2019, which was the first of many times plaintiffs cell became flooded during his seventy two days spent in that cell. These two defendants knew of these infractions and denied plaintiff footwear which caused him to walk barefooted in contaminated water. Also within these first two weeks in this cell plaintiff got the opportunity to speak with Captain Lewis, and Deputy Superintendent B.J. Salamon about the issues previously mentioned in this paragraph and the fact that plaintiff needed to be moved because of these issues and they both responded by telling plaintiff he was on mattress and toilet paper restriction and he would be moved when he was off of these restrictions. Plaintiff eventually spoke to Correctional Officer Stivison, Sergeant Rieg, Lieutenant Detwiler, and Superintendent Barry Smith during the course of the seventy two days he spent in that cell and they lied continuously telling plaintiff he would be moved. Defendants Correctional Officer Hershberger, Correctional Officer Miller, Correctional Officer Stivison, Sergeant Rieg, Lieutenant Detwiler, Superintendent Barry Smith, Captain Lewis, and Deputy Superintendent B.J. Salamons actions or lack thereof constitutes violations of the Eighth, and Fourteenth Amendments to the U.S. Constitution due to the cruel an unusual punishment, and due process violations that stem from failure to provide adequate medical and mental health care, and the proper sanitation subjecting plaintiff to inhumane conditions of confinement. These eight defendants caused plaintiff to suffer inflammation to his feet, back pains, reoccurring asthma attacks, and psychological distress in the form of panic attacks, anxiety, depression, trouble sleeping, and a intense fear of seeking psychological treatment while being housed in the Department

13

(Continued: NEGLIGENCE CLAIM—Paragraph 2.)

Of Corrections because what was previously stated herein this paragraph all stems from plaintiff seeking psychological treatment. Plaintiff suffered economic losses due to him receiving treatment for the inflammatory damage to his feet, and will suffer future economic losses due to his need for psychological treatment, and possibly psychiatric treatment, possibly treatment for his back, and possibly treatment for arthritis.

3. After handling matters informally which is encouraged by Department Of Correction policy DC-ADM 804 which is attached as Exhibit C plaintiff took it upon himself to make use of the inmate grievance system and defendants Superintendent Barry Smith, and Captain Acey who partook in the grievance process at SCI-Houtzdale owed plaintiff a duty of care when redressing his grievances. These two defendants breached that duty by acting careless an unreasonable by implementing cover up schemes to impede justice in the grievance process, and legal process. Plaintiff filed his initial grievance in regards to him being subject to be a victim of verbal abuse, excessive force, and inhumane cell conditions, both of which ultimately resulted in him being harmed. This grievance which plaintiff is referring to is grievance number 792494 which will be attached as Exhibit D along with related documents. Plaintiff requested relief in the form of pictures of the damaged window inside the cell he was in, documents of damages to that cell, and camera footage from four different cameras between the dates of January 8, 2019 up until March 19, 2019. Superintendent Barry Smith who was mentioned in grievance number 792494 for his personal involvement eventually responded to the grievance upholding the prior decision to reject it and deemed it frivolous. Superintendent Barry Smiths response will be attached as Exhibit D (3). Superintendent Barry Smith had a bias view because he was mentioned in this grievance and denied plaintiffs relief so him an his co-workers wouldn't be exposed for their unjustifiable action, which ultimately ~~had~~ led to him purposely disrupting the grievance process, and legal process because he knew plaintiff was intending to pursue legal action. Plaintiff then went on to file yet another grievance which was grievance number 795404 which will be attached as Exhibit B along with related documents. This second grievance was filed in regards to the inhumane cell conditions, and verbal abuse. In this grievance plaintiff requested relief in the form of pictures of the damaged window inside the cell he was in, documents of damages to that cell, and camera footage from three different cameras between the dates of January 8, 2019 up until March 19, 2019. The relief requested threaten to expose not only the inhumane cell conditions, and verbal abuse but it would expose the excessive force plaintiff was subject to as well. Captain Aceys ~~an~~ response to grievance number 795404 will be attached as Exhibit B (1) and it stated that the footage from the camera which surveyed C block of the restricted housing unit where plaintiff was housed during the altercation was no longer available, and plaintiff finds

14

(Continued: NEGLIGENCE CLAIM – Paragraph 3.).

It hard to believe that for the seventy two days he spent in seven cell on C block of the restricted housing unit that this camera did not work in a facility where the well being of the individuals housed in their care are top priority. Captain Acey also denied plaintiffs request for documents, and outright refused to acknowledge plaintiffs request to preserve the footage from the camera located directly inside of seven cell. Captain Acey intentionally covered up the wrong doing of his co-workers so plaintiff took it upon himself to file a appeal to his bias decision which will be attached as Exhibit B (2), and raised the issues previously mentioned about Captain Acey denying plaintiffs request to preserve documents, and refusing to acknowledge the request for camera footage from the camera located inside the cell plaintiff was in at the time, and the fact that Captain Acey said the camera footage from the camera that surveyed C block was not available for the seventy two days plaintiff was in that cell. Superintendent Barry Smith responded to plaintiffs appeal ultimately deeming it frivolous ignoring plaintiffs requested relief, and his response will be attached as Exhibit B (3). Superintendent Barry Smith should of never been able to respond to this grievance because he was mentioned in the grievance for his personal involvement, Captain Acey, and Superintendent Barry Smith violated the Spoilation Of Evidence Doctrine, Superintendent Barry Smith absolutely had a obligation to preserve all the camera footage requested in both grievance number 792494, and grievance number 795404 because plaintiff requested it for legal purposes. Captain Acey also had a obligation to preserve all the camera footage requested in grievance number 795404 because plaintiff requested it for legal purposes. These two defendants conduct caused plaintiff psychological distress in the form of panic attacks, anxiety, depression, and trouble sleeping due to the defendants covering up the verbal abuse, excessive force, and inhumane cell conditions, which caused plaintiffs numerous injuries, which were reoccurring asthma attacks, permanent damage to his left eye, inflammation to his feet, back pains, and psychological distress. These two defendants cover up schemes which interfers with plaintiff legally redressing issues pertaining to these injuries, and may possibly cause plaintiff economic losses due to him receiving eye treatment, and treatment for the inflammatory damage to his feet, and the fact that he will need eye treatment in the future, psychological treatment in the future, and possibly psychiatric treatment, possibly treatment for his back, and possibly treatment for arthritis. Plaintiff will also suffer economic losses in the form of psychological treatment, and possibly psychiatric treatment do to these two defendants actions. These two defendants also violated Department Of Corrections policy DC-ADM 804 which will be attached as Exhibit C and states that no inmate shall be punished, retaliated against, or otherwise harmed for the use of the grievance system and plaintiffs First, Eighth, and Fourteenth Amendments to the U.S. Constitution by interfering with plaintiffs right to petition the government for a redress of grievances, cruel an unusual punishment, due process, and equal protection of the laws.

(Continued: NEGLIGENCE CLAIM- Paragraph 4.)

4. Furthermore plaintiff was eventually transferred from SCI-Houtzdale to SCI-Pine Grove. Defendant Correctional Officer Shvison who was also transferred from SCI-Houtzdale to SCI-Pine Grove owed plaintiff a duty of reasonable care because plaintiff was housed in SCI-Pine Grove where he was employed. Correctional Officer Shvison was mentioned in a couple grievances which is attached as Exhibit B, and Exhibit D that plaintiff filed against him at SCI-Houtzdale in order to pursue legal action against him, and he threatened an antagonized plaintiff to try to scare him from doing so. While plaintiff was housed in SCI-Pine Grove in cell one hundred an twelve on E A unit of the restricted housing unit between the dates of October 27, 2020 up until November 9, 2020 Correctional Officer Shvison passed out dinner trays between the time frame of 3:30pm-5:30pm, and informed plaintiff that there was a target on his back and threatened plaintiff with the use of retaliation telling him "that he knew who he was cause of what he did to his brother and that he was going to continue to make plaintiffs life a living hell." Plaintiff doesn't know if Correctional Officer Shvison was making a sarcastic joke by refering to himself as his brother, but plaintiff does know for a fact that he's been having issues concerning his legal documents since that threat was issued. Correctional Officer Shvisons actions were unreasonable causing plaintiff psychological distress in the form of panic attacks, anxiety, depression, and trouble sleeping, and constitutes violations of Department Of Corrections policy DC-ADM 804 which will be attached as Exhibit C and states that no inmate shall be punished, retaliated against, or otherwise harmed for the use of the grievance system and the First, Eighth, and Fourteenth Amendments to the U.S. Constitution by him interfering with plaintiffs right to petition the government for a redress of grievances, showing cruel an unusual punishment, and violating plaintiffs due process and equal protection of the laws. Plaintiff will suffer economic losses due to his need for future psychological treatment, and possibly psychiatric treatment.

5. Plaintiff filed grievance number 898642 at SCI-Pine Grove which will be attached as Exhibit E along with related documents in regards to him being threatened with the use of retaliation. Defendants Security Captain B. Sheeder, and Superintendent Lee J. Estock who both responded to this grievance owed plaintiff a reasonable duty of care which was breached due to them acting careless an unreasonable. Plaintiff requested relief in the form of camera footage from the dates of October 27, 2020 up until November 9, 2020 between the time frame of 3:30pm-5:30pm of the camera that surveys E A unit of the restricted housing unit. Security Captain B. Sheeder denied plaintiffs request to preserve camera footage for legal action, which makes no sense beings though he's stating that the officer who threatened plaintiff with the use of retaliation never worked in the restricted housing unit during that time frame. Security Captain B. Sheeder implemented this cover up scheme to protect his fellow officer and his response will be attached as Exhibit E (5).

16

(Continued : NEGLIGENCE CLAIM-Paragraph. 5.)

Plaintiff went on to file a appeal to Captain B. Sheeders response and that appeal which will be attached as Exhibit E (2) states plaintiffs initial issues and the fact that Security Captain B. Sheeder implemented a cover up scheme by denying plaintiffs relief in the form of camera footage to protect his fellow officer, Superintendent Lee J. Estock responded to that appeal stating that he did not preserve the camera footage because plaintiff requested fourteen days worth of footage which is not a valid excuse when dealing with serious issues especially since plaintiff only requested footage for the specific time frame of 3:30pm-5:30pm which is only a two hour time span. Then Superintendent Lee J. Estock also stated that the officer who was on camera threatening plaintiff with the use of retaliation was only in SCI-Pine Grove from October 27, 2020 up until October 29, 2020 which narrows the time frame down even more. Superintendent Lee J. Estocks response will be attached as Exhibit E (3). These two defendants both claim that the officer who threatened plaintiff with the use of retaliation never worked in the restricted housing unit during this time frame and that plaintiff is only making a attempt to discredit one of their officers why didn't they preserve the camera footage for purposes of vindication. These two defendants had a obligation to preserve this camera footage because plaintiff requested it for legal purposes and their failure to do so violates the Spoilation Of Evidence Doctrine. These two defendants manipulative tactics used to cover up their co-workers wrong doings caused plaintiff psychological distress in the form of panic attacks, anxiety, depression, trouble sleeping, and plaintiff will suffer economic losses due to his need for future psychological treatment, and possibly psychiatric treatment. These two defendants violated Department Of Corrections policy DC-ADM 804 which is attached as Exhibit C and states that no inmate shall be punished, retaliated against, or otherwise harmed for the use of the grievance system and the First, Eighth, and Fourteenth Amendments to the U.S. Constitution was violated by defendants interfering with plaintiffs right to petition the government for a redress of grievances, them showing cruel an unusual punishment, and violating plaintiffs due process and equal protection of the laws.


6.    Defendants Librarian B. Weaver, and Correctional Officer Rietscha who were employed at SCI-Pine Grove where this incident took place owed plaintiff a duty of reasonable care when handling plaintiffs legal documents. These two defendants breached that duty by acting careless an unreasonable by tampering with plaintiffs legal documents which were to be used in plaintiffs active criminal case. Plaintiff will attach cash slip as Exhibit F, and request slip as Exhibit G that he wrote on October 21, 2020 in order to start the process of getting his legal documents copied, as proof that these are in fact legal documents. Now while plaintiff was housed on E A unit in one hundred an twelve cell on the date of October 22, 2020 plaintiff sent legal documents to the prison library in order to make copies of his transcripts so he could prepare legal filings for his

(Continued: NEGLIGENCE CLAIM-Paragraph 6.)

active criminal case, when handling plaintiffs legal documents Librarian B. Weaver, and Correctional Officer Rietscha clearly proved to be negligent when they showed up to E A unit of the restricted housing unit on October 27, 2020 between the times of 10:00am- 11:59am and hand delivered plaintiff's legal documents to another cell. Plaintiff repeatedly called out to the two defendants from his cell telling them to make sure they were given the copies to the right cell and in order to inquire about his legal documents that he sent out on the morning of October 22, 2020 to be copied, and the two defendants blatantly ignored plaintiff when he tried to request information regarding his legal documents. About one hour after the two defendants hand delivered plaintiffs legal documents to the wrong cell the person who obtained plaintiffs legal documents informed Correctional Officer Rietscha during one of his rounds that they were given plaintiffs legal documents. Correctional Officer Rietscha then returned the legal documents to plaintiff which were not copied and had a bunch of documents missing from what was originally sent out to be copied. If you look at Exhibit H (1) which is a grievance response to grievance number 896471 it acknowledges the fact that camera footage indeed showed Librarian B. Weaver, and Correctional Officer Rietscha hand deliver plaintiffs legal documentations to the wrong cell aiding in the lost and interception of plaintiffs legal documents resulting in a invasion of privacy. These two defendants carelessness directly caused plaintiff harm and their actions was inexcusable beings though they were warned, and the fact that every cell has a name tag identifying the person housed in that cell. As stated before plaintiff had a active criminal case pending in The Supreme Court of Pennsylvania at the time and plaintiff needed those transcripts which were lost and intercepted to add as ehibits in order to adequately file his application for leave to file an amended petition for allowance of appeal which was ultimately denied because of this issue. This denial will be attached as Exhibit I. These two defendants violated plaintiffs First, Fourth, Eighth, and Fourteenth Amendments to the U.S. Constitution by tampering with plaintiffs legal documents which were to be used in plaintiffs active criminal case, and by interfering with plaintiffs right to petition the government for redress of grievances in his criminal case, and by showing cruel an unusual punishment, and denying plaintiff due process and equal protection of the laws. By these two defendants sabotaging plaintiffs appeal in his criminal case it ultimately causes plaintiff personal injury by hindering him from regaining his freedom, and economic losses in the form of attorney fees in order for plaintiff to retain a copy of the transcripts lost, and money plaintiff would make once his freedom was obtained. Plaintiff will also suffer economic losses due to his need for future psychological treatment, and possibly psychiatric treatment because plaintiff suffers panic attacks, anxiety, depression, and trouble sleeping.

## DELIBERATE INDIFFERENCE (Continued: DELIBERATE INDIFFERENCE-Paragraph 1.)

1. Defendants Secretary Of Corrections John E. Wetzel, Superintendent Barry Smith, Deputy Superintendent Close, Deputy Superintendent B.J. Salamon, Lieutenant H. Veihdoffer, Nurse Deborah Askey, and CERT team members Matthew Cox, Jamie W. Oliver, Brian McAllister, and John Firment who were employed at SCI-Houtzdale where this incident took place all knew of plaintiffs serious medical needs and failed to respond reasonably to it. Lieutenant H. Veihdoffer, Nurse Deborah Askey, and the CERT team members showed up to psychiatric observation cell number 1005 where plaintiff was housed on January 8, 2019 between the time frame of 8:00am - 9:00am and Lieutenant H. Veihdoffer, and one of the CERT team members sprayed plaintiff with mace as the remaining CERT team members and Nurse Deborah Askey watched without intervening to help plaintiff knowing he suffers from a severe respiratory deficiency known as asthma. This audio an video recorded planned use of force was used by the defendants in order to transfer plaintiff to the restricted housing unit. Beings though this was a planned use of force defendants had ample time to come up with ~~alternative~~ a alternative method to prevent agitating plaintiffs life threatening medical condition. Plaintiff who could not breathe nor see was then handcuffed, and escorted to the restricted housing unit on C block, and was placed in seven cell which is a observation/camera cell that has a camera inside the cell and outside the door of the cell facing inside the cell. Plaintiff was then placed on top of the metal bed frame, and instructed to open his eyes to have them rinsed by Nurse Deborah Askey, and when plaintiff opened his eyes he was sprayed for a second time directly in his eyes for no apparent reason before they all exited the cell. Nurse Deborah Askey displayed ill will along with Lieutenant H. Veihdoffer and the CERT team members because she posed as a decoy to this unjustifiable act which noone protested to. Defendants intentionally placed plaintiff in this cell that they knew was defective, because not only are there documents about a crack in the back window of the cell, but plaintiff overheard one of the defendants say "Put him in that fucked up cell" and "Get that mattress out of there". Plaintiff eventually sustained back pains, and inflammatory damage to his feet from being in this cell. Secretary Of Corrections John E. Wetzel, Superintendent Barry Smith, and Deputy Superintendent Close who are responsible for the safety an security of the individuals housed at their facility, and Deputy Superintendent B.J. Salamon who is responsible for the medical and mental health care of the individuals housed at this facility are all held liable for failing to accommodate people with respiratory disabilities in use of force training as well as through policies an procedures. These defendants mentioned in this paragraph violated plaintiffs Eighth, and Fourteenth Amendments to the U.S. Constitution because they knew plaintiff had serious medical needs and showed deliberate indifference to his medical needs causing him injuries, and by using

(Continued: DELIBERATE INDIFFERENCE-Paragraph 1.)

excessive force to maliciously cause harm and obtain gratification, Plaintiff suffered multiple asthma attacks and could of possibly died from the defendants locking him in the cell with mace lingering around it and by not providing him with medical treatment, Lieutenant Ho Veihdoffer, Nurse Deborah Askey, and the CERT team members also did not provide medical treatment plaintiffs eyes which were damaged at the time ultimately leading to permanent damage to his left eye, nor did they allow plaintiff to continually receive the psychological treatment he needed and was receiving while he was in the psychiatric observation cell.

2. Defendants Correctional Officer Hershberger, Correctional Officer Miller, Captain Lewis, Deputy Superintendent B.J. Salamon, Correctional Officer Stivison, Sergeant Rieg, Lieutenant Detwiler, and Superintendent Barry Smith who were employed at SCI-Houtzdale where this incident took place all knew of plaintiffs serious medical needs and failed to respond reasonably to them, Furthermore plaintiff is asthmatic and was left in a cell with mace lingering around it from January 8, 2019 to March 19, 2019 causing him to have reoccurring asthma attacks. Plaintiff also suffered inflammatory damage to his feet from him being in a cell seventy two days during the winter that had a ten inch spider web shape crack in the window and continued to become flooded with contaminated water on a regular basis. Plaintiff suffered back pains due to him having to either sleep on a metal bed frame, a concrete floor, or sitting on a metal toilet because of him not having a mattress in his cell the first two weeks in the cell, The conditions previously mentioned coupled along with plaintiffs light which was being controlled from outside the cell being left on for the first two weeks causing plaintiff sleep deprivation, and the fact that plaintiff had no property, clothing, mattress, bedding, and toilet paper to wipe his buttock for the first two weeks as well, and that he was denied showers, yard, and cleaning supplies to clean his cell which had mace lingering around it caused plaintiff psychological distress. When plaintiff brought all of the issues previously mentioned in this paragraph to the attention of Correctional Officer Hershberger, and Correctional Officer Miller they made jokes about how cold the cell was by calling the cell siberia and ignoring plaintiffs complaints, and even admitted to their unreasonable conduct which can be seen if you look at Exhibit B (1). During these first two weeks in that cell plaintiff also spoke to Captain Lewis, and Deputy Superintendent B.J. Salamon about the issues previously mentioned in this paragraph and they responded by telling plaintiff he was on mattress and toilet paper restriction and that they would move him when he was off of these restrictions which never happened. Plaintiff also encountered Correctional Officer

20

(continued: DELIBERATE INDIFFERENCE-Paragraph 2.)

Stivison, Sergeant Rieg, Lieutenant Detwiler, and Superintendent Barry Smith during the course of these seventy two days he spent in that cell and spoke to them about him being left in the cell with mace lingering around it causing it to continuously trigger his asthma, and the fact that the inhumane cell conditions caused him inflammatory damage to his feet, and that he needed to be moved because being in that cell was causing psychological distress and these four defendants kept lying telling plaintiff he would be moved to another cell. These eight defendants violated plaintiff's Eighth, and Fourteenth Amendments to the U.S. Constitution.

3. Defendants Captain Acey, and Superintendent Barry Smith knew about plaintiff's serious medical needs and failed to respond reasonably to them during the grievance process at SCI-Houtzdale which can be seen if you look at Exhibit B, and Exhibit D along with all related documents. These two defendants knew of the inflammatory damage to plaintiff's feet and knew that plaintiff asked for relief in the form of camera footage, pictures, and related documents in order for plaintiff to pursue legal action for monetary relief to aid in alleviating his medical needs, and they unjustifiably denied plaintiff this relief in violation of the First, Eighth, and Fourteenth Amendments to the U.S. Constitution and violation of the Spoilation Of Evidence Doctrine.

4. Defendant Correctional Officer Stivison knew of plaintiff's serious medical needs and failed to respond reasonably to them. Plaintiff was transferred from SCI-Houtzdale to SCI-Pine Grove. Correctional Officer Stivison who was also transferred from SCI-Houtzdale to SCI-Pine Grove was mentioned in a couple of grievances which will be attached as Exhibit B, and Exhibit D that plaintiff filed against him at SCI-Houtzdale in order to pursue legal action against him, and he threatened plaintiff to try to scare him from doing so because he knew plaintiff was seeking monetary relief to aid in alleviating his medical needs for past injuries in the form of asthma attacks, inflammation to his feet, and psychological distress that plaintiff acquired due to him being careless an unreasonabl. Correctional Officer Stivison violated plaintiff's Eighth, and Fourteenth Amendment rights to the U.S. Constitution.

## FAILURE TO PROTECT

1. Defendants Secretary Of Corrections John E. Wetzel, Superintendent Barry Smith, Deputy Superintendent Close, Deputy Superintendent B.J. Salamon, Lieutenant H. Yeihdoffer, Nurse Deborah Askey, and CERT team members Matthew Cox, Jamie W. Oliver, Brian McAllister, and John Firment who were employed at SCI-Houtzdale where this incident took place

(Continued: FAILURE TO PROTECT-Paragraph 1.)

all knew that there was a substantial risk plaintiff would be seriously harmed and they failed to respond reasonably to protect plaintiff. Lieutenant H. Veihdoffer, Nurse Deborah Askey, and the CERT team members showed up to psychiatric observation cell number 1005 where plaintiff was housed on January 8, 2019 between the time frame of 8:00am-9:00am and Lieutenant H. Veihdoffer, and one of the CERT team members sprayed plaintiff with mace as the remaining CERT team members and Nurse Deborah Askey watched without intervening to help plaintiff knowing he suffers from a severe respiratory deficiency known as asthma. Plaintiff was then handcuffed and escorted to the restricted housing unit on C block, and was placed in seven cell on top of a metal bed frame, and instructed to open his eyes to have them rinsed by Nurse Deborah Askey, and when plaintiff opened his eyes he was sprayed for a second time directly in his eyes before they all exited the cell. Nurse Deborah Askey displayed ill will along with Lieutenant H. Veihdoffer and the CERT team members because she posed as a decoy to this unjustifiable act which noone protested to. Defendants intentionally placed plaintiff in this cell that they knew was defective, because not only are there documents about a crack in the back window of the cell, but plaintiff overheard one of the defendants say "Put him in that fucked up cell?" and "Get that mattress out of there." Plaintiff eventually sustained back pains, and inflammatory damage to his feet from being in this cell. Plaintiff also suffered reoccurring asthma attacks and could of possibly died from the defendants locking him in the cell with mace lingering around it and by not providing him with medical treatment. Plaintiff was also not provided medical treatment for his eyes which were damaged at the time ultimately leading to permanent damage to his left eye, nor did they allow plaintiff to continually receive the psychological treatment he needed and was receiving while he was in the psychiatric observation cell. Secretary Of Corrections John E. Wetzel, Superintendent Barry Smith, and Deputy Superintendent Close who are responsible for the safety an security of the individuals housed at their facility, and Deputy Superintendent B.J. Salamon who is responsible for the medical and mental health care of the individuals housed at this facility are all held liable for failing to accommodate people with respiratory disabilities in use of force training as well as through policies an procedures. These defendants mentioned in this paragraph violated plaintiffs Eighth, and Fourteenth Amendments to the U.S. Constitution.

2. Defendants Correctional Officer Hershbarger, Correctional Officer Miller, Captain Lewis, Deputy Superintendent B.J. Salamon, Correctional Officer Shvison, Sergeant Rieg, Lieutenant Detwiler, and Superintendent Barry Smith who were employed at SCI-Houtzdale where this incident took place all knew there was a substantial risk plaintiff would be seriously harmed and failed to respond reasonably to protect plaintiff. Furthermore plaintiff is asthmatic and was left in a cell with mace

(Continued: FAILURE TO PROTECT- Paragraph 2.)

lingering around it from January 8, 2019 to March 19, 2019 causing him to have reoccurring asthma attacks. Plaintiff suffered inflammatory damage to his feet from him being in a cell seventy two days during the winter that had a ten inch spider web shape crack in the window and continued to become flooded with contaminated water on a regular basis. Plaintiff suffered back pains due to him having to either sleep on a metal bed frame, a concrete floor, or sitting on a metal toilet because of him not having a mattress in his cell the first two weeks in the cell. The conditions previously mentioned coupled along with plaintiff's light which was being controlled from outside the cell being left on for the first two weeks causing plaintiff sleep deprivation, and the fact that plaintiff had no property, clothing, mattress, bedding, and toilet paper to wipe his buttocks for the first two weeks as well, and that he was denied showers, yard, and cleaning supplies to clean his cell which had mace lingering around it caused plaintiff psychological distress. When plaintiff brought all of the issues previously mentioned in this paragraph to the attention of Correctional Officer Hershberger, and Correctional Officer Miller they made jokes about how cold the cell was by calling the cell siberia and ignoring plaintiffs complaints, and even admitted to their unreasonable conduct which can be seen if you look at Exhibit B (2). During the first two weeks in that cell plaintiff also spoke to Captain Lewis, and Deputy Superintendent B. J. Salamon about the issues previously mentioned in this paragraph and they responded by telling plaintiff he was on mattress and toilet paper restriction and that they would move him when he was off of these restrictions which never happened. Plaintiff also encountered Correctional Officer Shrison, Sergeant Rieg, Lieutenant Detwiler, and Superintendent Barry Smith during the course of those seventy two days he spent in that cell and spoke to them about him being left in the cell with mace lingering around it causing it to continuously trigger his asthma, and the fact that the inhumane cell conditions caused him inflammatory damage to his feet, and that he needed to be moved because being in that cell was causing psychological distress and these four defendants kept lying telling plaintiff he would be moved to another cell. These eight defendants knew that there was a substantial risk plaintiff would be harmed and failed to respond reasonably to protect plaintiff in violation of his Eighth, and Fourteenth Amendment rights to the U.S. Constitution.

3. Defendants Captain Acey, and Superintendent Barry Smith knew there was a substantial risk plaintiff would be harmed and failed to respond reasonably to protect plaintiff during the grievance process at SCI-Houtzdale by trying to hinder plaintiff from pursuing legal action by employing cover up schemes to hide the wrong doings of their co-workers, and in Superintendent Barry Smiths case he intended to hide his own wrong doings as well. These cover up schemes can be seen in grievances along with all related documents which will be attached as Exhibit B, and Exhibit D. These two defendants

(Continued: FAILURE TO PROTECT-Paragraph 3.)

knew of the inflamatory damage to plaintiffs feet and knew that plaintiff asked for relief in the form of camera footage, pictures, and related documents in order for plaintiff to pursue legal action for monetary relief to aid in alleviating his medical needs, and they unjustifiably denied plaintiff this relief in violation of the First, Eighth, and Fourteenth Amendments to the U.S. Constitution and violation of the Spoilation Of Evidence Doctrine.

4. Defendant Correctional Officer Stvison knew there was a substantial risk plaintiff would be harmed and failed to respond reasonably to protect plaintiff. Plaintiff was transferred from SCI-Houtzdale to SCI-Pine Grove. Correctional Officer Stvison who was also transferred from SCI-Houtzdale to SCI-Pine Grove was mentioned in a couple of grievances which will be attached as Exhibit B, and Exhibit D that plaintiff filed against him at SCI-Houtzdale in order to pursue legal action against him. Furthermore because of this between the dates of October 27, 2020 until November 9, 2020 on E A unit of the restricted housing unit at SCI-Pine Grove Correctional Officer Stvison threatened plaintiff to try to scare him from pursuing legal action because he knew plaintiff was seeking monetary relief to aid in alleviating his medical needs for injuries in the form of asthma attacks, inflammation to his feet, and psychological distress that plaintiff acquired due to him being careless an unreasonable. Correctional Officer Stvison violated plaintiffs First, Eighth, and Fourteenth Amendment rights to the U.S. Constitution.

5. Defendants Security Captain B. Sheeder, and Superintendent Lee J. Estock knew there was a substantial risk plaintiff would be harmed and failed to respond reasonably to protect plaintiff during the grievance process at SCI-Pine Grove. These two defendants knew that plaintiff was threatened an antagonized by a particular Correctional Officer who he planned to pursue legal action against. These two defendants knew that plaintiff asked for relief in the form of camera footage in order to prove that the Correctional Officer who was mentioned in the grievance retaliated against plaintiff for the sole purpose of stopping plaintiff from pursuing legal action against him and causing psychological distress. These two defendants purposely failed to protect plaintiff by denying him relief in the form of camera footage which would of been used in his legal action in order to pursue monetary relief to aid in alleviating his medical needs in violation of the First, Eighth, and Fourteenth Amendments to the U.S. Constitutions as well as the Spoilation Of Evidence Doctrine. If you look at grievance number 898642 and related documents which is attached as Exhibit E it will clearly show how this injustice unfolded.

24

(Continued: FAILURE TO PROTECT- paragraph 6.)

6. Defendants Librarian B. Weaver, and Correctional Officer Rietscha who were employed at SCI-Pine Grove where this incident took place knew there was a substantial risk plaintiff would be harmed and failed to respond reasonably to protect plaintiff ultimately resulting in plaintiffs application for leave to file an amended petition for allowance of appeal being denied. This denial form will be attached as Exhibit I. Plaintiff sent legal documents in the form of transcripts to Librarian B. Weaver on October 22, 2020 to be copied in order to add as exhibits to his filings for his criminal appeal. Plaintiff will attach cash slip as Exhibit F, and request slip as Exhibit G which was used in order to start the process of him getting his legal documents copied. About a week later on October 27, 2020 between the times of 10:00am - 11:59am on EA unit of the restricted housing unit Librarian B. Weaver, and Correctional Officer Rietscha hand delivered plaintiffs legal documents to another cell as plaintiff called out to them telling them to make sure they were given the copies to the right cell and also to inquire about his copies. About an hour after delivering plaintiffs legal documents to the wrong cell the person they gave it to stopped Correctional Officer Rietscha during one of his rounds and informed him that they had plaintiffs legal document and when they were returned to plaintiff his documents were not copied and had a bunch of documents missing from what was originally sent out. If you look at Exhibit H (1) it acknowledges the fact that these defendants aided in the lost and interception of plaintiffs legal documents resulting in a invasion of privacy and plaintiff lossing his criminal appeal. These two defendants failed to protect plaintiffs personal legal documents causing plaintiff irreparable harm even after they were warned to check the legal documents before passing them out, then on top of that every cell has a name tag on the door identifying the person housed in that cell. These two defendants violated plaintiffs First, Eighth, and Fourteenth Amendments to the U.S. Constitution.

## RETALIATION CLAIM

1. Defendants Captain Acey, and Superintendent Barry Smith retaliated against plaintiff via the grievance process at SCI-Houtzdale in order to hinder him from pursuing legal action by employing cover up schemes to hide the wrong doings of their co-workers, and in Superintendent Barry Smiths case he intended to hide his own wrong doings as well. These cover up schemes can be seen in grievances which will be attached as Exhibit B, and Exhibit D along with all related documents. These two defendants knew of the inflammatory damage to plaintiffs feet and knew that plaintiff asked for relief in the form of camera footage, pictures, and related documents in order for plaintiff to pursue legal action for monetary relief to aid in alleviating his medical needs, and they unjustifiably denied plaintiff this relief in violation of the First, Eighth, and Fourteenth Amendments to the U.S. Constitution, and

(Continued: RETALIATION CLAIM-Paragraph 1.).

violation of the Spoilation Of Evidence Doctrine.

2. Defendant Correctional Officer Stivison retaliated against plaintiff for filing a grievance on him. Furthermore plaintiff was transferred from SCI-Houtzdale to SCI-Pine Grove. Correctional Officer Stivison who was also transferred from SCI-Houtzdale to SCI-Pine Grove was mentioned in a couple of grievances which will be attached as Exhibit B, and Exhibit D that plaintiff filed against him at SCI-Houtzdale in order to pursue legal action against him. Furthermore because of this between the dates of October 27,2020 until November 9,2020 on E A unit of the restricted housing unit at SCI-Pine Grove Correctional Officer Stivison threatened plaintiff to try to scare him from doing so because he knew plaintiff was seeking monetary relief to aid in alleviating his medical needs for injuries in the form of asthma attacks, inflammation to his feet, and psychological distress that plaintiff acquired due to him being careless an unreasonable. Correctional Officer Stivison violated plaintiffs First, Eighth, and Fourteenth Amendment rights to the U.S. Constitution.

3. Defendants Security Captain B. Sheeder, and Superintendent Lee J. Estock retaliated against plaintiff via the grievance process at SCI-Pine Grove in order to hinder him from pursuing legal action by employing cover up schemes to hide the wrong doing of one of their co-workers. These two defendants knew that plaintiff was threatened an antagonized by a particular Correctional Officer who he planned to pursue legal action against. These two defendants knew that plaintiff asked for relief in the form of camera footage in order to prove that the Correctional Officer who was mentioned in the grievance retaliated against plaintiff for the sole purpose of stopping plaintiff from pursuing legal action against him and causing psychological distress. These two defendants denied plaintiff relief in the form of camera footage which would of been used in his legal action in order to pursue monetary relief to aid in alleviating his medical needs in violation of the First, Eighth, and Fourteenth Amendments to the U.S. Constitution as well as the Spoilation Of Evidence Doctrine. If you look at grievance number 898642 and related documents which is attached as Exhibit E it will clearly show how this injustice unfolded.

4. Defendants Librarian B. Weaver, and Correctional Officer Rietscha who were employed at SCI-Pine Grove where this incident took place retaliated against plaintiff in order to stop plaintiff from pursuing legal action against one of

26

(Continued: RETALIATION CLAIM-Paragraph 4.)

their co-workers who threatened to make plaintiffs life a living hell around the time that these two defendants purposely gave plaintiffs legal documents to another cell on October 27, 2020 between the times of 10:00am - 11:59am on E A unit of the restricted housing unit ultimately resulting in plaintiffs application for leave to file an amended petition for allowance of appeal being denied. This denial form will be attached as Exhibit I. Plaintiff sent legal documents in the form of transcripts to Librarian B. Weaver to be copied on October 22, 2020 in order to add as exhibits to his legal filings for his criminal appeal. Plaintiff will attach cash slip as Exhibit F, and request slip as Exhibit G which was used to start the process of him getting his legal documents copied. If you look at Exhibit H (1) it acknowledges that these two defendants aided in the lost and interception of plaintiffs legal documents resulting in a invasion of privacy and plaintiff losing his criminal appeal. Plaintiff even warned the defendants to check the legal documents before passing them out, then on top of that every cell has a name tag on the door identifying the person housed in that cell. These two defendants violated plaintiffs First, Eighth, and Fourteenth Amendments to the U.S. Constitution.


## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

1. Defendants Lieutenant H. Veihdoffer, Nurse Deborah Askey, and CERT team members Matthew Cox, Javone W. Oliver, Brian McAllister, and John Firment who were employed at SCI-Houtzdale where this incident took place actions were extreme an outrageous, and they intentionally caused plaintiff extreme emotional distress, when they showed up to psychiatric observation cell 1005 where plaintiff was housed on January 3, 2019 between the time frame of 8:00am - 9:00am, and Lieutenant H. Veihdoffer, and one of the CERT team members sprayed plaintiff with mace as the remaining CERT team members, and Nurse Deborah Askey watched without ~~interven~~ intervening to help plaintiff knowing he suffers from a severe respiratory deficiency known as asthma. Being though this was a audio and video recorded planned use of force defendants had ample time to come up with a alternative method to prevent agitating plaintiffs life threatening medical condition. Plaintiff who could not breathe nor see was then handcuffed, and escorted to the restricted housing unit on C block, and placed in seven cell which is a observation/camera cell. Defendants intentionally placed plaintiff in this cell that they knew was defective, because not only are there documents about a ten inch spider webbed shape crack that was in the back window, but plaintiff overheard one of the defendants say "Put him in that fucked up cell" and "Get that mattress out of there." Plaintiff was then placed on top of the metal bed frame, and

(Continued: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS-Paragraph 1.)

instructed to open his eyes to have them rinsed by Nurse Deborah Askey, and when plaintiff opened his eyes he was sprayed for a second time directly in his eyes for no apparent reason before they all exited the cell. Nurse Deborah Askey displayed ill will along with Lieutenant H. Veihdoffer and the CERT team members because she posed as a decoy to this unjustifiable act which noone protested to. Furthermore this excessive use of force, denial of medical care, and the fact that defendants intentionally placed plaintiff in a hazardous cell violates Department Of Corrections policy DC-ADM 201 which is attached as Exhibit A and states that use of force is suppose to stop once order is restored and that force is not authorized as a means of punishment or revenge. It also constitutes violations of the Eighth, and Fourteenth Amendments to the U.S. Constitution because it was not applied in a effort to maintain or restore discipline but was used to maliciously cause harm and obtain gratification. Plaintiff suffered reoccurring asthma attacks and could of possibly died from the defendants locking him in a cell with mace lingering around it and by not providing him with medical treatment. Defendants also did not provide medical treatment for plaintiffs eyes which were damaged at the time ultimately leading to permanent damage to his left eye. Plaintiff eventually sustained back pains and inflammatory damage to his feet from the cell the defendants placed him in. Plaintiff suffered and continues to suffer psychological distress in the form of panic attacks, anxiety, depression, trouble sleeping, and a intense fear of seeking psychological treatment while being housed in the Department Of Corrections because what was previously stated herein this paragraph all stems from plaintiff seeking psychological treatment.


2.   Defendants Correctional Officer Hershberger, Correctional Officer Miller, Captain Lewis, Deputy Superintendent B.J. Salomon, Correctional Officer Stinson, Sergeant Rieg, Lieutenant Detwiler, and Superintendent Barry Smith who were employed at SCI-Houtzdale where this incident took place actions were extreme an outragous, and they intentionally caused plaintiff extreme emotional distress by having knowledge of the injuries sustained and the harsh hazardous an unsanitary cell conditions that he was subject to for seventy two days, which started on January 8, 2019 an ended on March 19, 2019, which was basically the whole winter. There were severe snow storms in that mountainous region that winter and plaintiffs cell which was a corner cell directly next to the yard had a ten inch spider web shape crack located in the back window which accumulated ice because of it. Defendants Correctional Officer Hershberger, and Correctional Officer Miller knew of this infraction not only from plaintiffs complaints, but also from them conducting numerous

28

(Continued: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS-Paragraph 2.)

routine security searches of the cell where they acknowledged it as having been there and even rubbed it in plaintiffs face by making sarcastic jokes calling the cell siberia. If you look at Exhibit B(1) you will see that these two defendants admitted to their negligent behavior. These two defendants also knew from complaints and their own observation that plaintiffs light which is controlled from outside the cell was left on for two weeks causing plaintiff sleep deprivation, and plaintiff had no property, clothing, mattress, bedding, and toilet paper for two weeks, and was denied showers, yard, and cleaning supplies to clean his cell which had mace lingering around it by the two defendants as well. Plaintiff was unable to wash the mace of his face an body nor wipe his buttocks after using the bathroom and was subject to either sleep on a freezing cold metal bed frame, freezing cold concrete floor, or sleep sitting on a freezing cold metal toilet which was filled with feces and urine due to plaintiffs cell water being cut off for two weeks because of plaintiffs toilet flooding his first night in the cell on January 8, 2019, which was the first of many times plaintiffs cell became flooded during his seventy two days spent in that cell. These two defendants knew of these infractions and denied plaintiff footwear which caused him to walk barefooted in contaminated water. Also within these first two weeks in this cell plaintiff got the opportunity to speak with Captain Lewis, and Deputy Superintendent B.J. Salamon about the issues previously mentioned in this paragraph and the fact that plaintiff needed to be moved because of these issues and they both responded by telling plaintiff he was on mattress and toilet paper restriction and he would be moved when he was off of those restrictions. Plaintiff eventually spoke to Correctional Officer Stivison, Sergeant Rieg, Lieutenant Detwiler, and Superintendent Barry Smith during the course of the seventy two days he spent in that cell and they lied continuously telling plaintiff he would be moved. Defendants Correctional Officer Hershberger, Correctional Officer Miller, Correctional Officer Stivison, Sergeant Rieg, Lieutenant Detwiler, Superintendent Barry Smith, Captain Lewis, and Deputy Superintendent B.J. Salamons actions or lack thereof constitutes violations of the Eighth, and Fourteenth Amendments to the U.S. Constitution due to the cruel an unusual punishment, and due process violations that stem from failure to provide adequate medical and mental health care, and the proper sanitation subjecting plaintiff to inhumane conditions of confinement. These eight defendants caused plaintiff to suffer inflammation to his feet, back pains, and reoccurring asthma attacks ultimately resulting in psychological distress in the form of panic attacks, anxiety, depression, trouble sleeping, and a intense fear of seeking psychological treatment while being housed in the Department of Corrections because what was previously stated herein this paragraph all stems from plaintiff seeking psychological treatment.

(Continued: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS-Paragraph 3.)

3. Defendants Captain Acey, and Superintendent Barry Smiths conduct was extreme an outragous, and they intentionally caused plaintiff extreme emotional distress via the grievance process at SCI-Houtzdale by trying to hinder plaintiff from pursuing legal action by employing cover up schemes to hide the wrong doings of their co-workers, and in Superintendent Barry Smiths case he intended to hide his own wrong doings as well. These cover up schemes can be seen in grievances which will be attached as Exhibit B, and Exhibit D along with all related documents. These two defendants knew of the inflammatory damage to plaintiffs feet and knew that plaintiff asked for relief in the form of camera footage, pictures, and related documents in order for plaintiff to pursue legal action for monetary relief to aid in alleviating his medical needs, and they unjustifiably denied plaintiff this relief in violation of the First, Eighth, and Fourteenth Amendments the the U.S. Constitution, and violation of the Spoilation Of Evidence Doctrine.

4. Furthermore plaintiff was eventually transferred from SCI-Houtzdale to SCI-Pine Grove. Defendant Correctional Officer Shvison who was also transferred from SCI-Houtzdale to SCI-Pine Grove acted in a extreme an outragous manner, and intentionally caused plaintiff extreme emotional distress. Now Correctional Officer Shvison was mentioned in a couple of grievance which is attached as Exhibit B, and Exhibit D that plaintiff filed against him at SCI-Houtzdale in order to pursue legal action against him, and he threatened an antagonized plaintiff to try to scare him from doing so. While plaintiff was housed in SCI-Pine Grove in cell one hundred an twelve on E A unit of the restricted housing unit between the dates of October 27, 2020 up until November 9, 2020 Correctional Officer Shvison passed out dinner trays between the time frame of 3:30pm - 5:30pm, and informed plaintiff that there was a target on his back and threatened plaintiff with the use of retaliation telling him "that he knew who he was cause of what he did to his brother and that he was going to continue to make plaintiffs life a living hell." Plaintiff doesn't know if Correctional Officer Shvison was making a sarcastic joke by referring to himself as his brother, but plaintiff does know for a fact that he's been having issues concerning his legal documents since that threat was issued. Correctional Officer Shvisons actions were unreasonable causing plaintiff psychological distress in the form of panic attacks, anxiety, depression, and trouble sleeping, and constitutes violations of Department Of Corrections policy DC-ADM 804 which will be attached as Exhibit C and states that no inmate shall be punished, retaliated against, or otherwise harmed for the use of the grievance system and the First, Eighth, and Fourteenth Amendments to the U.S. Constitution.

(Continued :INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS-Paragraph 5.)

5. Defendants Security Captain B. Sheeder, and Superintendent Lee J. Estocks conduct was extreme an outragous, and they intentionally caused plaintiff extreme emotional distress via the grievance process at SCI-Pine Grove by them using cover up schemes to impede justice in the grievance process, and legal process. These two defendants knew that plaintiff was threatened an antagoniced by a particular Correctional Officer who he planned to pursue legal action againsts. These two defendants knew that plaintiff asked for relief in the form of camera footage in order to prove that the Correctional Officer who was mentioned in the grievance redaliated against plaintiff for the sole purpose of stopping plaintiff from pursuing legal action against him and causing psychological distress. These two defendants denied plaintiff relief in the form of camara footage which would have been used in his legal action in order to pursue monetary relief to aid in alleviating his medical needs in violation of the First, Eighth, and Fourteenth Amendments to the U.S. Constitution as well as the Spoilation OF Evidence Doctrine. If you look at grievance number 898642 and related documents which is attached as Exhibit E it will clearly show how this injustice unfolded.

6. Defendants Librarian B. Weaver, and Correctional Officer Rietscha who were employed at SCI-Pine Grove where this incident took place intentionally caused plaintiff extreme emotional distress by acting extremely outragous ultimately resulting in plaintiffs application for leave to file an amended petition for allowance of appeal being denied. This denial form will be attached as Exhibit I. Plaintiff sent legal documents in the form of transcripts to Librarian B. Weaver on October 23,2020 to be copied in order to add as exhibits to his filings for his criminal appeal. Plaintiff will attach cash slip as Exhibit F, and request slip as Exhibit G which was used in order to start the process of him getting his legal documents copied. About a week later on October 27, 2020 between the times of 10:00am - 11:59am on E A unit of the restricted housing unit Librarian B. Weaver, and Correctional Officer Rietscha hand delivered plaintiffs legal documents to another cell as plaintiff called out to them telling them to make sure they were given the copies to the right cell and also to inquire about his copies. Theres absolutely no excuse for their actions beings though they were warned, and the fact that every cell has a name tag on the door identifying the person housed in that cell. About a hour after delivering plaintiffs legal documents to the wrong cell the person they gave it to stopped Correctional Officer Rietscha during one of his rounds and informed him that they had plaintiffs legal documents and when they were returned to plaintiff his documents were not copied and had a bunch of documents missing from what was originally sent out. If you look at Exhibit H (1) it acknowledges the fact that these defendants aided in the lost and interception of plaintiffs legal documents resulting in a invasion of privacy and

(Continued : INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS-Paragraph 6.)

plaintiff lossing his criminal appeal. These two defendants actions were outragious and caused plaintiff irrepairable harm and psychological distress in the form of panic attacks, anxiety, depression, and trouble sleeping. These two defendants violated plaintiffs First, Eighth, and Fourteenth Amendments to the U.S. Constitution.

## BREACH OF CONTRACT

1. Plaintiff and defendants Secretary Of Corrections John E. Wetzel, Superintendent Barry Smith, Deputy Superintendent Close, and Deputy Superintendent B.J. Salamon had a legally binding contract which can be seen if you look at Exhibit J. These defendants breached that contract by failing to accommodate people with respiratory disabilities in use of force training as well as through policies an procedures. Because of defendants actions or lack thereof plaintiff was maced two times on January 8, 2019 once in psychiatric observation cell number 1005, and once in seven cell on C block of the restricted housing unit and was left in a cell with mace lingering around it. Both of these instances occurred between the time frame of 8:00am – 9:00am and caused plaintiff reoccurring asthma attacks, and psychological distress in the form of panic attacks, anxiety, depression, trouble sleeping, and a intense fear of seeking psychological treatment while being housed in the Department Of Corrections. Defendants violated plaintiffs Eighth, and Fourteenth Amendments to the U.S. Constitution.

2. Plaintiff, and defendants Superintendent Barry Smith, and Deputy Superintendent B.J. Salamon had a legally binding contract which can be seen if you look at Exhibit J. These defendants breached that contract by subjecting plaintiff to inhumane cell conditions for seventy two days from January 8, 2019 to March 19, 2019. While plaintiff was housed in seven cell on C block of the restricted housing unit he spoke to Deputy Superintendent B.J. Salamon within the first two weeks of being in that cell and told her that he was left in a cell with mace lingering around it causing it to trigger his asthma, and that the cell was extremely cold due to a crack in the back window, that his cell became flooded with contaminated water, that he had no property, clothing, mattress, bedding, toilet paper, and that he was denied showers, yard, cleaning supplies, and was subject to sleep deprivation because his light that was controlled from outside the cell was left on, and she said that plaintiff was on mattress and toilet paper restriction and would be moved when he was off those restrictions which never happened. Eventually plaintiff spoke to Superintendent Barry Smith and told him that he was left in a cell with mace lingering around it causing it to trigger his asthma, and the fact that the inhumane cell conditions caused him inflammation to his feet, and that he

(Continued: BREACH OF CONTRACT—Paragraph 2.)

needed to be moved because being in that cell was causing psychological distress, and he lied to plaintiff telling him he would be moved. Plaintiff suffered reoccurring asthma attacks, inflammation to his feet, and psychological distress. These two defendants violated plaintiffs Eighth, and Fourteenth Amendments to the U.S. Constitution.

3. Plaintiff, and defendant Superintendent Barry Smith had a legally binding contract which can be seen if you look at Exhibit J. The defendant breached that contract via the grievance process which can be seen if you look at Exhibit B, and Exhibit D along with related documents. The defendant knew of the inflammatory damage to plaintiffs feet and knew that plaintiff asked for relief in the form of camera footage, pictures, and related documents in order for plaintiff to pursue legal action for monetary relief to aid in alleviating his medical needs, and he unjustifiably denied plaintiff this relief. Furthermore the defendant should of never been able to answer these grievances due to his personal involvement in the issues they were pertaining to. The defendant violated plaintiffs First, Eighth, and Fourteenth Amendments to the U.S. Constitution and the Spoilation Of Evidence Doctrine.

4. Plaintiff, and defendant Superintendent Lee J. Estock had a legally binding contract which can be seen if you look at Exhibit J. The defendant breached that contract via the grievance process which can be seen if you look at Exhibit E along with related documents which shows that the defendant denied plaintiff relief in the form camera footage which plaintiff requested to prove that a particular Correctional Officer who plaintiff planned to pursue legal action against threatened and antagonized plaintiff to stop him from doing so causing plaintiff psychological distress. The defendant employed a cover up scheme to protect his co-worker causing plaintiff psychological distress and possibly economic losses in violation of plaintiffs First, Eighth, and Fourteenth Amendments to the U.S. Constitution and the Spoilation Of Evidence Doctrine.

## IV. INJURY

1. As a result of defendants Lieutenant H. Veihdolfer, Nurse Deborah Askey, and CERT team members Matthew Cox, Jamie W. Oliver, Brian McAllister, and John Firments use of excessive force, denial of medical care, and the fact that they subject plaintiff to inhumane cell conditions caused plaintiff to suffer injuries in the form of reoccurring asthma attacks, permanent damage to plaintiffs left eye, back pains, inflammatory damage to his feet, and psychological distress in the form of panic attacks, anxiety, depression, trouble sleeping, and a intense fear of seeking psychological treatment while being housed in the Department Of Corrections. These defendants violated plaintiffs Eighth, and Fourteenth Amendment rights to the U.S. Constitution.

2. As a result of defendants Secretary Of Corrections John E. Wetzel, Superintendent Barry Smith, Deputy Superintendent Close, and Deputy Superintendent B.J. Salamon failing to accommodate people with respiratory disabilities in use of force training as well as through policies an procedures plaintiff suffered multiple asthma attacks, and psychological distress in the form of panic attacks, anxiety, depression, trouble sleep, and a intense fear of seeking psychological treatment while being housed in the Department Of Corrections. These four defendants violated plaintiffs Eighth, and Fourteenth Amendments to the U.S. Constitution.

3. As a result of defendants Correctional Officer Hershberger, Correctional Officer Miller, Captain Lewis, Deputy Superintendent B.J. Salamon, Correctional Officer Shivison, Sergeant Rieg, Lieutenant Detwiler, and Superintendent Barry Smith subjecting plaintiff to inhumane cell conditions plaintiff suffered inflammation to his feet, back pains, multiple asthma attacks, and psychological distress in the form of panic attacks, anxiety, depression, trouble sleeping, and a intense fear of seeking psychological treatment while being housed in the Department Of Corrections. These eight defendants violated plaintiff Eighth, and Fourteenth Amendments to the U.S. Constitution.

4. As a result of defendants Superintendent Barry Smith, and Captain Aceys conduct during the grievance process at SCI-Houtzdale plaintiff suffered injuries in the form of lost camera footage, lost pictures, lost documents, damage to the grievance process an legal process, and psychological distress in the form of panic attacks, anxiety, depression, and trouble sleeping by these two defendants covering up the verbal abuse, excessive force, and inhumane cell conditions which caused plaintiff numerous injuries which were multiple asthma attacks, permanent damage to his left eye, inflammation to his feet, back pains, and psychological distress. These two defendants violated the First, Eighth, and Fourteenth Amendments to the

(Continued: IV. INJURY)

U.S. Constitution.

5. As a result of defendant Correctional Officer Shvison threatening an antagonizing plaintiff in order to deter him from pursuing legal action against him ultimately causing plaintiff psychological distress in the form of panic attacks, anxiety, depression, and trouble sleeping. This defendant violated plaintiff's First, Eighth, and Fourteenth Amendments to the U.S. Constitution.

6. As a result of defendants Security Captain B. Sheeder, and Superintendent Lee J. Estock: conduct during the grievance process at SCI-Pine Grove plaintiff suffered injuries in the form of lost camera footage, damage to the grievance process an legal process, and psychological distress in the form of panic attacks, anxiety, depression, and trouble sleeping by these two defendants covering up the fact that plaintiff was threatened by one of their officers who caused plaintiff psychological distress. These two defendants violated plaintiff's First, Eighth, and Fourteenth Amendments to the U.S. Constitution.

7. As a result of defendants Librarian B. Weaver, and Correctional Officer Rietschas conduct plaintiff suffered injuries in the form of lost an interception of plaintiff's legal documents, invasion of privacy, lost of criminal appeal, lost of freedom, and psychological distress in the form of panic attacks, anxiety, depression, and trouble sleeping. These two defendants violated plaintiff's First, Eighth, and Fourteenth Amendments to the U.S. Constitution.

## V. EXHAUSTION OF LEGAL REMEDIES

1. Plaintiff, Keenan McIntosh used the grievance procedure available at SCI-Houtzdale to try and solve the problem by submitting two grievances concerning the issues herein.

2. On March 21, 2019 Plaintiff filed the initial grievance which is grievance number 792494 which presented facts relating to this complaint, that same day on March 21, 2019 plaintiff was sent a response saying that the grievance had been rejected. On April 8, 2019 plaintiff appealed the rejection of this grievance.

3. On April 8, 2019 plaintiff filed a second grievance which is grievance number 795404 which also presented facts related to this complaint. On April 19, 2019 a response was submitted denying the grievance deeming it frivolous. On April 22, 2019 plaintiff appealed the denied grievance.

4. Plaintiff, Keenan McIntosh was eventually transferred to another Pennsylvania Department Of Corrections institution where he was retaliated against and used the grievance procedure available at that facility which was SCI-Pine Grove to try and solve the problem by submitting a plethora of grievances resulting in the exhaustion of two of those grievances.

5. On October 29, 2020 plaintiff filed yet another grievance which was grievance number 896471 which presented facts that further related to this complaint. On November 23, 2020 a response was submitted Upholding In Part/ Denying In Part the grievance. On December 1, 2020 plaintiff appealed that grievance.

6. On November 12, 2020 plaintiff filed grievance number 898642 in regards to the issues mentioned herein. On December 3, 2020 a response was submitted denying the grievance. On December 8, 2020 plaintiff appealed that response.

## VI. PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully prays that this court enter judgment granting plaintiff:

1. Compensatory damages in the amount of thirty thousand ($30,000.00) dollars against each defendant.

2. Punitive damages in the amount of thirty thousand ($30,000.00) dollars against each defendant.

3. Pain an suffering in the amount of thirty thousand ($30,000.00) dollars against each defendant.

4. Plaintiffs cost in this suit.

5. Any additional relief this court deems, just, proper, and equitable.

Date: January 18, 2023

Respectfully Submitted

Keenan McIntosh-MV 9011
SCI-Phoenix
P.O. Box 244
1200 Mokychic Drive
Collegeville, PA 19426

## VII. JURY DEMAND

1. Plaintiff Keenan McIntosh is exercising his right to a jury trial on all issues pursuant to Fed.R.Civ.P. 38(b), and the Seventh Amendment to the U.S. Constitution.